UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARRY FRANZ VERDIEU,

    Petitioner,

v.                                          Case No: 2:14-cv-358-FtM-29MRM
                                               Case No. 2:11-CR-66-FTM-29DNF

UNITED STATES OF AMERICA,

    Respondent.

_____

**OPINION AND ORDER**

This matter comes before the Court on petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Cv. Doc. #1; Cr. Doc. #141)[1] filed on June 27, 2014. The government filed a Response in Opposition to Motion (Cv. Doc. #6) on August 29, 2014. The petitioner filed a Reply (Cv. Doc. #7) on September 18, 2014.

**I.**

On July 6, 2011, a federal grand jury in Fort Myers, Florida returned a two-count Indictment (Cr. Doc. #3) charging petitioner and his co-defendant John Peterson Alexis in Count One with conspiracy to possess with intent to distribute oxycodone in violation of Title 21, United States Code, Sections 841(a)(1) and

---

[1]The Court will make references to the dockets in the instant action and in the related criminal case throughout this opinion. The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the docket of the underlying criminal case as "Cr. Doc."

841(b)(1)(C), all in violation of Title 21, United States Code, Sections 846. In Count Two, petitioner and his co-defendant were charged with knowingly carrying a firearm and ammunition during and in relation to a drug trafficking crime, knowingly possessing the firearm and ammunition in furtherance of the drug trafficking crime identified in Count One, and knowingly aiding and abetting the carrying and possession in violation of Title 18, United States Code, Section 924(c)(1)(A)(I) and § 2.

Petitioner proceeded to trial as to both counts, and co-defendant John Peterson Alexis proceeded to trial as to Count Two only. After a 3-day trial, the jury rendered a Verdict of guilty on both counts for petitioner, and as to the co-defendant on Count Two. (Cr. Doc. #78.)

Prior to sentencing, trial counsel Robert P. Harris filed a Sentencing Memorandum and Request for Reasonable Sentence (Cr. Doc. #90). On April 23, 2012, the Court sentenced petitioner to a term of imprisonment of 60 months as to Count One, and a term of 60 months as to Count Two to be served consecutively to Count One, followed by a term of supervised release. (Cr. Doc. #94.) Judgment (Cr. Doc. #97) was filed on April 24, 2012, and a Notice of Appeal (Cr. Doc. #99) was filed the next day.

The Court permitted attorney Robert P. Harris to withdraw, and Scott Robbins was appointed to represent petitioner on appeal. (Cr. Doc. #112.) On appeal, petitioner and his co-defendant both

argued that the evidence at trial was insufficient to sustain the conviction as to Count Two. (Cr. Doc. #139.) On May 30, 2013, the Eleventh Circuit affirmed the conviction and sentence finding that the evidence was sufficient to convict under the "in furtherance of . . . . possesses prong" of 18 U.S.C. § 924(c)(1)(A), and the evidence at trial was sufficient to establish a nexus between the pistol and the drug transaction. (Id., pp. 5-6.)

Petitioner's current motion was signed and filed by counsel on June 27, 2014. Since a petitioner "gets the benefit of up to 90 days between the entry of judgment on direct appeal and the expiration of the certiorari period[1]," Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002), the motion was timely filed. See also 28 U.S.C. § 2255(f).

## II.

Petitioner's two arguments focus on Count Two only, i.e., the carrying of a firearm in relation to a drug trafficking offense, or possession in furtherance of a drug trafficking offense, or knowingly aiding and abetting in the carrying or possession in violation of 18 U.S.C. § 924(c)(1)(A)(i) and § 2. Petitioner argues ineffective assistance of counsel for failure to call an

---

1 The issuance of the mandate is irrelevant to determining the finality of the judgment. Close v. United States, 336 F.3d 1283, 1285 (11th Cir. 2003).

essential witness (Carol Smith) to verify petitioner's testimony; and, for the failure to reasonably investigate and interview the witness (Carol Smith) to corroborate petitioner's testimony that he did not know that the gun was in the center console area of the vehicle.

**A. Evidentiary Hearing Standard**

A district court shall hold an evidentiary hearing on a habeas petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (citation omitted). However, a "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." Id. at 715. See also Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (a hearing is not necessarily required whenever ineffective assistance of counsel is asserted). To establish entitlement to an evidentiary hearing, petitioner must "allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance." Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015). Viewing the facts alleged

in the light most favorable to petitioner, the Court finds that the record establishes that petitioner is not entitled to relief, and therefore an evidentiary hearing is not required.

**B. Ineffective Assistance of Counsel Standard**

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. Hinton v. Alabama, ___ U.S. ___, 134 S. Ct. 1081, 1087-88 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) and Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a Strickland claim, a court need not address both Strickland prongs if the petitioner fails to satisfy either of them." Kokal v. Sec'y, Dep't of Corr., 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is simply reasonableness under prevailing professional norms considering all the circumstances. Hinton, 134 S. Ct. at 1088 (citations omitted). "A fair assessment of attorney performance requires

that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. See also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (the Court looks to facts at the time of counsel's conduct). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010). Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992); Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989).

**C. Factual Background**

On appeal, the Eleventh Circuit summarized the factual background as follows:

> On June 22, 2011, Verdieu rented a Chevrolet Traverse sport utility vehicle from Enterprise Car Rental in West Palm Beach, Florida. Two days later, on June 24, Verdieu and Alexis drove the Traverse to the Edison Mall in Fort Meyers [sic] where Alexis had arranged to purchase 3,000 oxycodone pills for $10,500 from a confidential informant (CI) cooperating with the Drug Enforcement Administration

>   (DEA). DEA agents and local law enforcement
>   officers were waiting for Verdieu and Alexis
>   at the mall.
>
>   After parking the Traverse in the mall parking
>   lot, Verdieu and Alexis entered the mall,
>   where Alexis met the CI in the food court.
>   When Alexis failed to persuade the CI to
>   conduct the drug sale in the parking lot,
>   Alexis and Verdieu returned to the Traverse so
>   that Alexis could retrieve the cash. Verdieu
>   then remained in the car while Alexis went
>   back to the food court to finish the
>   transaction.
>
>   At the food court Alexis and the CI prepared
>   to exchange "a big wad of cash" for a bag of
>   pills. The transaction was interrupted when
>   Alexis "received a phone call from someone .
>   . . and abruptly got up and . . . left."
>   Alexis returned to the Traverse, where Verdieu
>   was waiting in the driver's seat, and got in
>   the front passenger side.
>
>   At this point DEA agents moved in and arrested
>   the pair. As agents were handcuffing Verdieu,
>   one asked him if he had any guns. Verdieu
>   responded that he had one in the back seat of
>   the Traverse, in a laptop computer bag.
>   Although the agents did not find the gun in
>   the back seat or the laptop bag, they found a
>   fully loaded .38 caliber semi-automatic pistol
>   between the driver's seat and the front
>   passenger seat, in the Traverse's open center
>   console. The firearm was located alongside a
>   partially unwrapped sandwich, an open bottle
>   of water, a camera case, a phone charger, and
>   a CD. The gun was positioned in such a way
>   that it could be easily withdrawn from the
>   Traverse's console by either the driver or the
>   front passenger. The agents also found
>   $10,500 in Verdieu's pants pocket.

(Cr. Doc. #139, pp. 2-3); <u>United States v. Verdieu</u>, 520 F. App'x 865, 866 (11th Cir. 2013).

During trial, Special Agent Price testified that the semi-automatic pistol was found in the console between the driver's seat and the passenger's seat of the vehicle rented by petitioner. (Cr. Doc. #117, pp. 192, 213.) The pistol was loaded, with the barrel facing the rear of the vehicle, and the magazine contained five rounds of ammunition in addition to the round that was chambered. (Id., pp. 193, 195.) Also in the center console were a bottle a water, a sandwich, a camera case, and a phone charger. (Id., p. 195.)

An investigator with the Department of Agriculture Consumer Services, Division of Licensing, testified that petitioner applied for a concealed weapons permit on September 11, 2006, and was issued the permit on January 16, 2007. The permit was suspended on June 29, 2010, and notice was sent by certified mail to petitioner's listed address in West Palm Beach, Florida. (Cr. Doc. #118, pp. 54-55.) Avery Vaughn Milstead of First Choice Gun & Ammo testified that petitioner purchased the Jimenez .380 handgun and another gun from him in West Palm Beach, Florida, on September 11, 2010. (Id., pp. 79-81.)

Petitioner admitted upon arrest that he had a firearm in the car, and indicated it was in his laptop bag. (Cr. Doc. #119, p. 36.) The vehicle was a rental car rented by petitioner because his fiancé was pregnant and she needed the car to take the kids to school while her car was being repaired. Petitioner testified he

used the car on the day of the arrest because his fiancé was done with it, and he figured he could conduct his air conditioner related business and be back the next day. (Id., pp. 37-38.) As relevant here, petitioner further testified:

> A. Well, the firearm was in my laptop bag and since the car was in the shop, we parked the car in our garage and that morning when she was taking the kids to school, she noticed that my laptop bag was in the back seat, so she removed the firearm and put it in the glove -- inside the center console so the kids wouldn't mess with it because they -- they go through my stuff at times. But it was the right thing to do because she didn't want the firearm in the back seat with the kids.
>
> Q. Okay. I think I'm a little confused. You said that you live with your mother?
>
> A. I live with my mother currently because of the situation.
>
> Q. All right. At the time you lived with your fiancé?
>
> A. Right, yes.
>
> Q. And children?
>
> A. Yes. The judge would allow me to stay with my mother during this whole -- this whole case.
>
> Q. All right. So now did you know that the firearm was in the center console?
>
> A. No, I did not.
>
> Q. And when the police -- did the police have you on the ground at the time you told them where you thought the firearm was?
>
> A. Yes, I was.

Q. Did you have any reason to lie to them at that point?

A. No, I did not.

Q. Were you attempting to be cooperative?

A. I was fully cooperative.

. . .

Getting back to the firearm, you weren't sure that it was in the center console?

A. No, I was not.

Q. But did you put a hamburger in that center console at some point?

A. No, I did not. That hamburger was already in there on top of the firearm.

Q. When did the -- when did the hamburger get there?

A. Well, it -- I'm not sure what it was. It was – it was something that was in aluminum foil and with -- with a paper towel around it. So I figure it was something that she was eating, maybe.

Q. You figure that now?

A. Yes.

Q. What do you mean there was a towel around it?

. . .

A. There was aluminum foil, paper towel, as far as in the picture. That's how she carries the sandwiches she would put a sandwich that she made in aluminum foil and paper towel to wipe her mouth after she ate it.

Q. So the fact that the firearm was butt up, I guess as they say, did that have any significance to you?

>           A. No, sir.
>
>           Q. You didn't put it there?
>
>           A. I didn't put it there.

(Id., pp. 38-39, 41, 42.)  Petitioner testified that he did not know that his concealed weapons permit had been suspended since he had faxed back the required information and assumed it was "back in operation."  (Id., p. 43.)  During closing argument, the government argued:

> And Mr. Verdieu would have you believe that
> that's just something his wife left in that
> rental car previously.  And he would have you
> believe that his wife moved, or girlfriend –
> fiancé, I think he referred to her, moved the
> gun from the computer bag to the center
> console, placing it butt up so that anyone who
> needed it would have easy access to it. He
> didn't know she had done that because she
> didn't tell him. A tall tale, ladies and
> gentlemen?  You alone are the judges of that.

(Id., p. 62.)

The Court instructed the jury that petitioner could only be found guilty if the facts as to Count Two showed beyond a reasonable doubt that petitioner conspired to possess with intent to distribute Oxycodone as charged in Count One; that petitioner knowingly carried or possessed a firearm; and that petitioner either carried the firearm during and in relation to the drug trafficking crime, or that petitioner possessed it in furtherance of the drug trafficking crime.  (Cr. Doc. #119, p. 111.)

**D. Merits**

"Concerning the analysis of attorney competence, the protections of the Sixth Amendment necessarily extend to counsel's activities before trial, when consultation, thorough going investigation and preparation [are] vitally important." Mulligan v. Kemp, 771 F.2d 1436, 1440 (11th Cir. 1985) (quoting Powell v. Alabama, 287 U.S. 45, 57 (1932)). Evaluating counsel's effectiveness is from the "standpoint of what was possible at the time", and the evaluation "of whether an attorney has adequately conducted pre-trial investigation is complex, depending upon such factors as the number of issues in the case, the relative complexity of those issues, the strength of the government's case, and the overall strategy of trial counsel." Mulligan, 771 F.2d at 1440 & 1441 (citation omitted).

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 690-91. "[T]here is no absolute duty to investigate particular facts or a certain line of defense, although a complete failure to investigate may constitute deficient performance of counsel in certain circumstances." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001).

Petitioner argues that his fiancé's testimony would have corroborated and given credibility to his own testimony at trial that he did not know that the gun was in the center console during the drug trafficking. As a preliminary matter, the Court notes that no affidavits or statements from Carol Smith were attached in support of the petition, although counsel states that they could readily be produced if required.[2] The Court will only consider what was timely submitted for filing with the motion. Arguing that an evidentiary hearing is required without first providing a factual basis for the hearing does not entitle petitioner to a hearing. Rather, to be entitled to a hearing, petitioner must sufficiently allege facts supporting both deficient performance and prejudice. Hernandez v. United States, 778 F.3d at 1232-33.

**1. Reasonableness Prong**

Speculation as to the substance of Carol Smith's testimony, and that it would have been helpful, is insufficient to carry

---

[2] Counsel argues that if the Court were to find that an affidavit is required, the "remedy" would be to require petitioner to supplement or amend the motion, not dismissal. (Cv. Doc. #7, p. 3.) No legal support is provided for this position.

petitioner's burden to show that counsel's conduct was deficient. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (citation omitted).[3] Carol Smith's testimony may or may not have been consistent with petitioner's version of events, but would obviously have been viewed as biased given her relationship to petitioner. Even if consistent, a reasonable attorney would not necessarily have called her as a witness subject to cross-examination by the government. Petitioner's "mere speculation", e.g., Streeter v. United States, 335 F. App'x 859, 864 (11th Cir. 2009), fails to support a finding that counsel's failure to call Carol Smith rendered his assistance ineffective. Chandler v. United States, 218 F.3d 1305, 1319 (11th Cir. 2000) ("Considering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case.").

Petitioner elected to testify, and it would appear his testimony was not believable to the jury. United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) ("[W]hen a defendant chooses to

---

[3] "When a defense counsel fails to investigate his client's only possible defense, although requested to do so by him; and fails to subpoena witnesses in support of the defense, it can hardly be said that the defendant has had the effective assistance of counsel." Gomez v. Beto, 462 F.2d 596, 597 (5th Cir. 1972). However, in this case, there is no argument or affidavit to indicate that petitioner told his attorney to investigate his fiancé, call her as a witness, or that she was willing to testify.

testify, he runs the risk that if disbelieved "the jury might conclude the opposite of his testimony is true."). Nothing establishes that counsel provided ineffective assistance in deciding not to call petitioner's fiancé as a witness. Based on the testimony and overwhelming evidence presented at trial of petitioner's possession, access, and ownership of the firearm, the Court finds that petitioner has not shown that counsel's performance was deficient.

**2. Prejudice Prong**

Petitioner was charged in Count Two under a statute that provides: ". . . any person who, during and in relation to any crime of violence or drug trafficking crime [ ] for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A)(i). The Jury found petitioner guilty of Count Two, and specifically found that petitioner <u>both</u> carried the firearm during and in relation to the drug trafficking crime, and that petitioner possessed the firearm in furtherance of the drug trafficking crime. (Cr. Doc. #78, p. 4.)

The Court defined possession to the jury to include actual and constructive possession, and as follows:

> To possess a firearm in furtherance of a crime means that the firearm helped, promoted, or advanced the crime in some way. To carry a firearm is to transport or control a firearm in a way that makes it available for immediate use while committing the drug trafficking crime. To carry a firearm is not limited to the carrying of firearms on the person. **It also applies to a person who knowingly possesses and conveys a firearm in a vehicle, including the locked glove compartment or trunk of a car which the person accompanies.**
>
> To carry a firearm during a crime means that there is a temporal link between the carrying of the firearm and the drug trafficking crime. That is, the carrying of the firearm must have occurred **at the same time** as the drug trafficking violation.
>
> To carry a firearm in relation to a crime means that there must be a firm connection between the defendant, the firearm, and the drug trafficking crime. The firearm must have helped with some important function or purpose of the crime, **and not simply have been there accidentally or coincidentally.**

(Id., pp. 112-113) (emphasis added). While it is true that the possession of the firearm cannot be "coincidental or entirely 'unrelated' to the crime", it is "in relation to" if it facilitates or has the *potential* to facilitate the drug trafficking offense. Smith v. United States, 508 U.S. 223, 238 (1993) (citations omitted). For "furtherance", "a conviction under this portion of § 924(c) requires that the prosecution establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002). The government can establish a nexus between a firearm and the

drug trafficking by "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." Timmons, at 1253 (citations omitted).

In this case, petitioner was identified as the driver of the rental vehicle, which was rented in his name. At the Edison Mall, petitioner was observed driving up and down the rows in the parking lot, and parking in different spaces before exiting the vehicle to walk into the food court with his co-defendant. After co-defendant's meeting with the undercover agent and a confidential source, petitioner was observed exiting the Edison Mall and returning to the vehicle, which was again moved. After the undercover agent left to retrieve the Oxycodone, petitioner was arrested. A search of petitioner revealed a large sum of money in his left pant pocket, and a small amount of marijuana consistent with personal use inside a bag in his right front pocket. When asked, petitioner stated that there may be a gun in his computer bag, in the vehicle, for which he had a concealed weapons permit. The firearm was located with a loaded magazine in the open center console of the vehicle, upside down, butt up, facing the same direction as the vehicle. (Cr. Doc. #146, ¶¶ 14-25.)

The testimony of petitioner's fiancé would not have changed the result of the guilty verdict because it would not add any material factual matters that were not already part of the record. Therefore petitioner cannot establish prejudice. <u>Strickland</u>, 466 U.S. at 694 (a defendant must show that there is a "reasonable probability" that the result of the proceedings would have been different, "sufficient to undermine confidence in the outcome"). <u>See also</u> <u>Franklin v. United States</u>, 227 F. App'x 856, 860 (11th Cir. 2007) (finding that evidence of guilt was so overwhelming that hearing was not required to show an absence of prejudice).

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #141) is **DENIED**.

2. The Clerk of the Court shall enter judgment accordingly and close the civil file. The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.** A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this   15th   day of June, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Petitioner
AUSA